# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ELI VALENTINO

**CRIMINAL COMPLAINT**

FILED
KC 1-25-08
JAN 2 5 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CASE NUMBER: 08CR 0061

MAGISTRATE JUDGE ASHMAN

I, ROBERT FROUNFELKER, being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about January 24, 2008 in Chicago, in the Northern District of Illinois defendant ELI VALENTINO did

attempt to knowingly and intentionally possess with intent to distribute a controlled substance, namely a substance containing a detectable amount of heroin; in violation of Title 21, United States Code, Section 841(a);

in violation of Title 21 United States Code, Section(s) 846.

I further state that I am a(n) Special Agent with U.S. Immigration and Customs Enforcement and that this complaint is based on the following facts:

See attached affidavit

Continued on the attached sheet and made a part hereof: X Yes ___ No

Signature of Complainant

Sworn to before me and subscribed in my presence,

January 25, 2008
Date

at Chicago, Illinois
City and State

Martin C. Ashman, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

STATE OF ILLINOIS     )
                      ) SS
COUNTY OF COOK        )

## AFFIDAVIT

I, Robert Frounfelker, being duly sworn on oath, state as follows:

1.  I am a Special Agent with the Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE). I have been employed by ICE since March, 2003. Previously, I was employed as a U.S. Customs Service Agent since October, 2001. I am currently assigned to the office of the Resident Agent in Charge, O'Hare International Airport. I received training and have experience in investigating violations of the immigration, import and export laws of the United States, including violations involving the illegal importation of narcotics.

2.  I make this affidavit from personal knowledge based upon my participation in this investigation, reports I have read related to this investigation, conversations I have had with others who have knowledge of the events and circumstances described herein, and interviews of various individuals. The information below is provided for the limited purpose of establishing probable cause that, on or about January 24, 2008, ELI VALENTINO did attempt to knowingly possess with intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 846. Because the information set forth below is for the limited purpose of establishing probable cause in support of a criminal complaint, it does not contain all the facts of which I am aware related to this investigation. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part and are not verbatim. Statements from recorded

1

conversations do not include all statements or topics covered during the course of the recorded conversations, and are not taken from a final transcript.

3. On January 18, 2008, ICE agents determined that a Federal Express ("FEDEX") International Priority Package, Tracking Number 8647 3694 4051 (the "Subject Parcel") was seized at the U.S. Customs and Border Protection ("CBP") FEDEX hub, at Memphis Tennessee. The FEDEX hub is one of several arrival sites for international mail shipments to the United States and was the first point of entry into the United States for the Subject Parcel. All items making entry into the United States are subject to examination. The Subject Parcel was selected for an extensive exam by CBP Officers.

4. The Subject Parcel was addressed to Individual A at an address in Chicago, Illinois (the "Subject Premises"). The Subject Parcel showed a return address of CTO Joyero Diamante, Ignacio Manuel Altamirano, No. 110 Col. Centro, Iguala, GRO, Mexico 40000. The exterior of the Subject Parcel was a cardboard box wrapped in brown packing tape with a white label and black handwritten markings indicating the shipping and return address.

5. When the Subject Parcel was opened by CBP Officers, two large silver colored rocks, broken pieces of terra cotta and silver colored bracelets were discovered inside. The rocks were x-rayed and one of the rocks ("the Subject Item") revealed inconsistent densities. A drill exam was performed and a brown powder substance was found within the "rock." The brown powdery substance field-tested positive for the presence of heroin.

6. Agents took custody of the Subject Parcel and its contents for further investigation.

7. Inside the Subject Item, agents found heroin wrapped in layers of carbon paper and plastic, smeared with an unknown substance. Drug traffickers have been known to use carbon

2

paper and oils to defeat detection by x-ray or canine searches. Together, the Subject Item and the heroin found within weighed approximately 3.9 kilograms. Based on my training and experience, a kilogram of heroin, uncut, is worth approximately $60,000; after it is cut, a kilo is worth approximately $90,000.

8. On January 24, 2008, ICE Agents, Postal Inspectors and local and state law enforcement authorities conducted a controlled delivery of the Subject Parcel to the Subject Premises. As part of this controlled delivery the Subject Item was recreated and the actual controlled substance within was replaced with sham material.

9. Before delivering the Subject Parcel, and pursuant to the authority granted by this Court on January 24, 2008, agents obtained an anticipatory search warrant which permitted search of the Subject Premises upon the taking of the Subject Parcel into the Subject Premises.

10. At approximately 12:50 pm on January 24, 2008, an undercover agent (UCA), posing as a FEDEX delivery person, delivered the Subject Parcel to the Subject Address. The UCA rang the doorbell corresponding to that of the first floor apartment. Individual B answered the door, and accepted delivery of the Subject Parcel on behalf of Individual A.

11. At approximately 2:00 pm, ICE agents executed the search warrant. Upon entering the Subject Premises, agents searched the subject premises, and found that the Subject Parcel had not been opened. Agents interviewed the individuals present in the home. Individual B, one of the occupants, agreed to talk to the agents, and told the agents that about a week ago, Individual A had notified Individual B that a package would be delivered to the Subject Premises. According to Individual B, prior to the agents' entrance into the Premises, Individual B had sent Individual A a text saying that a package had been delivered for Individual A.

12. After speaking to agents, Individual B placed a series of consensually monitored and recorded telephone calls to Individual A, informing Individual A that the Subject Parcel had been delivered and it sounded like something was broken inside. In these calls, Individual B told Individual A that Individual B had opened the package and that the package contained drugs; Individual B asked Individual A if the Parcel contained cocaine. Individual B asked why Individual A would send such a package to the house. Individual A did not respond, but agreed to come pick up the Subject Parcel. Individual A called Individual B back, and told Individual B, in summary, that ELI VALENTINO would come get the package.

13. VALENTINO then called Individual B and said he would come to pick up the package. VALENTINO initially requested that Individual B meet him with the package at a nearby Walgreens. Individual B refused. VALENTINO called again; in this call, he told Individual B that he would come to the back of the house and that Individual B should take the package out to him. Individual B again refused. VALENTINO then said he would come into the house but would enter through the back door.[1] VALENTINO's calls to Individual B were consensually recorded.

14. Individual B also told agents that Individual A told Individual B that VALENTINO dealt "weed" and ecstasy. Further, Individual B also said that Individual A told Individual B that VALENTINO had borrowed a gun from another individual, and that individual was threatening Individual A so that VALENTINO would return the gun.

15. When VALENTINO arrived at the Subject Premises, he parked his car in the alley. He

---

[1] The identification of VALENTINO in these conversations is based upon my conversations with Individual B.

4

knocked at the back exterior door of the apartment.

16.    VALENTINO was advised of his Miranda rights and signed a written waiver of his rights. VALENTINO told agents that he was expecting that the Subject Parcel would contain one kilogram of cocaine, and that he had the package sent to the Subject Premises instead of his house for fear of being arrested. He also admitted that it was his package and contents.

17.    VALENTINO also told agents that he had been expecting two half-kilos of cocaine, and that he already had obtained a buyer for the cocaine prior to the cocaine being shipped.

18.    Based on the foregoing, your affiant respectfully submits that there is probable cause to believe that, on or about January 24, 2008, VALENTINO did attempt to knowingly possess with intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 846.

FURTHER, AFFIANT SAYETH NOT.

Special Agent Robert Prounfelker
U.S. Immigration and Customs Enforcement
Chicago RAC-O'Hare Office
Des Plaines, IL 60018

Sworn to before me and subscribed in my presence
this 25th day of January, 2008

Martin C. Ashman
United States Magistrate Judge